**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**
      **Plaintiff**

      v.                            Case No. 15 Cr. 667 (KPF)

**MAURICE SESSUM,**
      **Defendant**

---

**REPLY TO GOVERNMENT'S MOTION INOPPOSITION OF RQUEST FOR COMPASSIONATE RELEASE, PURSUANT TO 18 U.S.C. SECTION 3582(c)(1)(A)**

---

Defendant Maurice Sessum, ("Sessum"), by and through his undersigned counsel hereby submits the following in reply to the government's response opposing his request for compassionate release.

ARGUMENT

The government opposes Sessum's request for 3 reasons; "(i) Sessum has not exhausted his administrative remedies; (ii) Sessum has not demonstrated that extraordinary and compelling circumstances justify a sentence reduction, and (iii) clearly release is not warranted under Section 3553(a) factors for Sessum, who, for half a decade, helped lead a debt collection business that brazenly preyed on thousands of financially struggling victims." [Doc. 654, p. 1 & 3].

In the response, the government asserts that Sessum's argument of being unable to obtain relief via exhaustion to the halfway house he now reports to is factually and legally incorrect [Id., p. 5-6]. The

1

government cited cases that are not on point with the facts and legal propositions governing exhaustion of administrative remedies. Specifically, the government contends that because Sessum is still technically in BOP custody, while in the halfway house, he can make a request to the the RRM in the Pittsburgh halfway house to exhaust his administrative remedies.

This contention by the government is refuted by the plain language of the statute where it states the defendant "must" make request to the ***Warden of the institution***. There is no Warden in RRM facilities, as they are privately owned facilities contracted by the BOP for monitoring an inmate during his reentry phase. The inmate, although still under the custody of the BOP, is incapable of following this portion of the statute. As such, the exemptions to exhaustion become determinative as to whether exhaustion is mandated. (See, Session Initial Motion, p. 2, citing cases).

After the government submitted the above argument, they submitted an addendum letter that Sessum had in fact exhausted his administrative remedies on July 22, 2020, but that he did not follow through after the Warden's denial and complete the remedial process. Again, the government's legal proposition is legally incorrect. It is well settled that exhaustion under Section 3582(c)(1)(A) allows the Court to procure jurisdiction when the inmate has filed a request with the Warden of his institution and either, the Warden has denied the request or "30 days" has passed without any response from the Warden. See, *United States v. Kissi,* 469 F. Supp. 3d 21 (E.D.N.Y. 2020) (holding that court has jurisdiction after the Warden either denies the inmate request for compassionate release, or "30 days has past" since the request by the inmate) citing cases. See also, *United States v. Douglas,* No. 2:8-CR- 00014-JPH-CMM (S.D.N.Y. November 6, 2020) (same).

Accordingly, the government's request based on failure to exhaust administrative remedies

should be rejected.

Second, the government argues that Sessum does not present "extraordinary and compelling circumstances" to justify relief [Doc. 654, p. 6-10]. The gravamen of the government's opposition is that Sessum's medical conditions were being treated by the BOP and then referred to "pain management" services to manage this pain [Doc. 654, p, 8]. The government's argument does not address Sessum's primary contention that the terms of his home confinement are prohibiting him from; (1) he cannot take the necessary medication due to the restrictions of the halfway house rules on the type of medications that can be taken, which would alleviate the pain, and (2) proper medication would allow him to manage the pain and obtain gainful employment and earn income that his family needs to live on. The government, in referencing Sessum's medical conditions and history of the insufficient support by the BOP, inadvertently is agreeing that Sessum's conditions do in fact present extraordinary and compelling circumstances. Specifically, the government agrees that, "as an inmate in the custody of the BOP, Sessum is *not entitled* to pain alleviation medicine of his choice" [Doc. 654 at p. 8]. Sessum never requested medicine of "his choice," but medicine recommended by doctors that would alleviate his pain so that he can function as a normal person. However, because of the ingredients of those types of medication (i.e. perhaps, opiate based), the halfway house, nor the BOP, allow its use. This proposition leaves Sessum in severe pain, and unable to work and forced to live very uncomfortably, whereby compassionate release or alternatively, applying the balance of his house arrest to supervised release, can resolve his problem.

The government also cites cases holding that; "prolonged pain due to delayed treatment and scenarios in which a defendant has received treatment, if not his preferred treatment, did not justify compassionate release" [Doc.654m at 9]. These cases are not on point with the

3

facts and circumstances here. The government keeps referring to Sessum's request as *preferred treatment*. This is incorrect. Sessum is referring treatment and medication that is being prescribed by doctors that would relieve pain and allow normal functioning, but is unable to be administered, due to the rules in the BOP and halfway house. Further, for the government to take this position, knowing the defendant has had medical professionals recommend the specific medications that will resolve the pain issue, is not only cruel, but disingenuous.

Next, the government rejects Sessum's argument regarding his medical condition, denying him the opportunity for relief of a one year sentence reduction for participating in the RDAP program. The government called this argument "hypothetical and speculative" [Doc. 6564, p. 9]. The fact that the one year sentence reduction from RDAP is earned from participation in the program is well understood. However, Sessum's argument is that his medical condition denied him that opportunity that was afforded to all other similarly situated inmates. Sessum's argument is strengthened by his overall prison record and his record since his release to the halfway house. Specifically, Sessum did not have any incident reports his entire time in the prison system. Sessum programmed throughout his time in the prison camp and even volunteered his time to help young inmates. In addition, Sessum has not had any issues, whatsoever, while reporting to the halfway house on house arrest. The sum of these parts dictates that it is more likely than not that Sessum would have been a candidate for the one year sentence reduction, pursuant to 18 U.S.C. Section 3621.

Addressing Sessum's other contention regarding his sentence (i.e. the EBRR time credits), the government argues that the argument fails for several reasons, (i.e. "Section 3582(c)(1)(A) is the improper vehicle for this challenge to his sentence"; and "the BOP has

exclusive jurisdiction to determine sentence credits in the first instance" [Doc. 654, p. 10]. What the government's response is failing to understand is the Court's discretionary power under Section 3582(c)(1)(A) to reduce a sentence for any and all reasons it determines that relief is warranted. Section 3582(c)(1)(A) allows the Court to weigh ***any and all facts and changes in law*** that have occurred since the initial sentencing and then determine whether relief is warranted ***in the interest of justice***. See, Concepcion v. United States, 597 US _, 2022, Docket No. 20–1650 (holding that Courts have unfettered discretion to modify sentences when the Court determines that, based on facts that have occurred ***post sentencing,*** they rise to "extraordinary and compelling circumstances"). The specific conduct of the BOP here in failing to apply the time credits across the board as mandated by the statute, in-and-of-itself, is the very reason for the enactment of Section 3582(c)(1)(A).

Specifically, after the enactment of the FIRST STEP Act in December, 2018, the BOP refused to follow its mandates and apply the 54 days good time, retroactively, and to effectuate the policy of the time credits (i.e. EBRR). Finally, the Department of Justice (DOJ) had to step in and force the BOP to begin implementing these mandates. Hundreds, if not thousands, of inmates were immediately released, based on the BOP finally doing what the law required under the FIRST STEP Act. (See, Motion, p. 4-5) citing 18 U.S.C. Section 3632(d)(4)(C) and 28 C.F.R. Section 523.41 which governs the application of time credits for EBRR under the FIRST STEP Act. The government's position is that if they can't get relief from the BOP, whether or not the BOP is in compliance with the law or codified regulations, so what. This is a cruel position to take when freedom is at stake and owed to the inmate, by law. Thus, the government's position that Sessum has no remedy to obtain the time credits he is owed is incorrect as a matter of law because under Section 3582(c)(1)(A), this Court has the power to

take into consideration the BOP's lethargic, and, perhaps, intentional refusal to release inmates under the provisions the law states what is the proper time of incarceration.

Lastly, the government relies on the Section 3553(a) factors for this Court to deny relief. The government relies on the nature of the offense, which is a non-violent fraud offense, in which there are no "victims" because no restitution was ordered. The government's position on relying on the nature and circumstances of the offense is not in compliance with the spirit and letter of Compassionate Release jurisprudence. If the analysis was based on Section 3553(a), (i.e. "nature and circumstances of the offense), compassionate release can never be granted because these facts cannot change. Thus, the statute itself (Section 3582(c)(1)(A) would be a nullity.

Compassionate Release under its modified version from the FIRST STEP Act has changed its standard when the Court, not the BOP, was given full discretion to modify sentences and determine what constitutes extraordinary and compelling circumstances. And, the Courts have made clear, that U.S.S.G. 1B1.13 is inapplicable to this motion. Compassionate Release is a post conviction motion. As such, the analysis is based on what the defendant/inmate has done ***after sentencing***. Otherwise, there may never be a grant of a compassionate release motion. Conversely, the case law is full of cases whereby defendants who have committed murders, serious drug offenses, and multi-million-dollar fraud offenses, have in fact received compassionate release motions, without any medical condition. Sessum does not want the Court to think in any way that he is minimizing his offense or does not have remorse. However, when the government chooses to argue that Sessum's crime is a reason for denial of compassionate release, the case law is littered with massive frauds that the government chooses to overlook.

Thus, Section 3553(a)(1) is not a reflective analysis in adjudicating a post-conviction motion for relief such as compassionate release. When we review the other sections of 3553(a) factors, Sessum's score allows for relief. Sessum has been a model prisoner. He programmed throughout his period in the prison camp. He volunteered his time to assist youth. He maintained a job in prison despite documented BOP serious health issues. He has maintained excellent conduct without any issues during a long pretrial bond period, while incarcerated in the prison camp and post release to home confinement. Sessum is considered a non-violent defendant and, as established by the facts stated above, he is not a danger to the community, which is a decisive factor in granting this motion. In sum, the government's reliance on the nature and circumstances of Sessum's offense to state he does not deserve relief based on the Section 3553(a) factors is not viewing the Section 3553(a) factors through a *post-conviction* prism.

## CONCLUSION

For the foregoing reasons, Sessum respectfully requests this Court grant his request for compassionate release or, alternatively, modify his sentence to add the final portion of halfway house time to his term of supervised release, so that he can get the proper medication needed to alleviate his pain and obtain gainful employment and help his family.

Dated: April __, 2023

Respectfully Submitted,

SCHRODER, JOSEPH & ASSOCIATES, LLP

_____

Linda H. Joseph, Esq.
*Attorney Pro Bono for Defendant*
*Maurice Sessum*